Good morning, ladies and gentlemen. We'll call the cases as they appear on the calendar this morning. We have Sergio Alfonso Arreola-Arreola v. John Ashcroft. Good morning, Your Honor. Good morning. Mark Vanderhout appearing on behalf of Mr. Arreola, who's here in court today, along with Stacey Tolson from my office. Alfonso Arreola has been living in this country as a permanent resident for over 40 years, since the age of one. He has three United States citizen children. His parents and siblings are all either United States citizens or permanent residents. He neither speaks nor writes Spanish, and he has absolutely no ties to Mexico, except for having been born there. Except for what? Except for having been born there. Oh, okay. The question before the court today is whether Mr. Arreola can be permanently banished from the United States based on a deportation order for driving under the influence that both sides agree had no basis in the law and without access now to the federal courts to correct this legal error. This is a consolidation of two cases. One is a challenge to his reinstated removal order based on his being deprived of judicial review. You know, you're talking so fast. I'm sorry. You can't pick up all the words. Maybe it's... I'll try to talk more slowly. I'm going to be 80 this week. Congratulations. Just be nice to me. I'll do my best in congratulations to you. Oh, no. That's all right. One, no gifts will be accepted. At least to that, to your rule. One is a challenge to the reinstated removal order based on his being deprived of judicial review in the first proceeding. The second is a direct appeal of that order based on an invalid waiver of his right to appeal due to the erroneous advice from his attorney that he had no recourse to the federal courts to challenge the immigration judge's decision. Here, Mr. Bannon, let's... You're going to have to help me through this process because this is a complicated... It is. It's especially the procedural posture that it's in. Correct, Your Honor. Let me ask you this. Do we have to decide both issues, that is, the reinstatement issue along with the issues related to the direct appeal in order to grant the relief that you're seeking? No, Your Honor. You could... Why not? Either could. No, let me explain. On the reinstatement order, in that, the claim is that he can attack in the appeal of the reinstatement order, he can attack the underlying deportation order in this case, because in the original deportation order, he was deprived of due process. Why? Because he did not validly waive his right to appeal. So we can challenge that here, and the Court could rule that that is an invalid waiver, consequently deprived of due process, consequently can get review here, and consequently... If we just take the reinstatement route, now, let's say, for example, that we were to agree with you. Correct. What does that get you? That gets us that the order, original, the reinstatement order is no good, and the Court would have declared the underlying order invalid. Why would you do that? Because in order to... Well, let's say, in other words, if we were to agree with you on the reinstatement, doesn't that, isn't the result of that just that you want a hearing before they try and throw him out again? Well, we would want a hearing if the Court believes there's still a factual dispute here. For instance, if the Court felt, well, okay, we'll agree with you on everything, but you've only submitted declarations about the invalid waiver, so maybe there should be an evidentiary hearing on that issue. We don't believe that's contested. There's uncontested declarations that are refuted. But if there was an evidentiary issue, for instance, on the issue of whether or not there was a valid waiver of the right to appeal, then that would have to get remanded to, for an evidentiary hearing on that issue. And that would be a circumstance where that would be true, correct. Okay. So if you were to prevail, why would we necessarily resolve the question of whether or not the prior order is invalid? Well... Through the reinstatement route. Well... You're getting all kinds of problems with applying, I think the government raises... Mendoza-Lopez. Yeah. Yes. We don't think you can apply Mendoza-Lopez and should. Mendoza-Lopez is grounded in due process. If it wasn't due process in the underlying hearing, then that order needs to be reviewed by some court somewhere. Here his lawyer said, you can't appeal this. You cannot go to the Federal courts. The Board of Immigration Appeals is going to affirm the immigration judge's decision, because it just ruled in the Magellanes case that driving under the influence is an aggravated felony. And you can't take that any further. You can't go to the court of appeals. So he was deprived of effective judicial review and deprived of due process. But I think I know where you're going. So then the question is, okay, where do we get here? We can't reinstate... You're talking about the reinstatement. What do you get out of the reinstatement? Out of the reinstatement, you get that the reinstated order is not valid, and you get that he didn't validly, you have to reach this issue, he didn't validly waive his right to appeal. Therefore, the underlying deportation order was unlawful. You'd have to be finding that because there was an invalid waiver. In order to be able to attack it, we have to show that it was an invalid waiver. So you would explicitly in that decision find that there was no valid waiver of the violation due process, therefore, the underlying order of deportation is unlawful. Now, you can then reach the exact same issue on the direct appeal. The direct appeal, we say that he was not given the right to appeal because his lawyer said he can't appeal. So he didn't voluntarily waive the right to appeal. Therefore, he can now file a direct appeal of that order of the immigration judge, and that's in his second case. Well, now, okay, let's talk, you know, in the BIA's decision on the direct appeal, you filed your appeal. It was late, and you asked them to consider the late appeal, I think is what the word, that he file a late appeal. They wrote back, and they cited, I think, four provisions in the four regulations. One was that the reinstatement order had been pending. One was that he left the country pursuant to a deportation order. One was reconsideration, and the other one was, I forget, I guess it was just beyond the 30 days, the timeliness one. I think. I can't remember exactly. But the argument that he was denied, that in waiving his right to appeal the immigration judge's decision, he was denied due process because it wasn't, he ultimately, when he sent in that letter of waive, by the way, I never found the letter that the lawyer sent in saying he waived his right, but there's references to it throughout the whole proceeding. And we don't dispute that, that ultimately he sent in something saying, based on his lawyer saying he can't go to federal court. But anyway, so if you were to agree that he received ineffective assistance from the executive counsel, and that rose to the level of fundamentally denying him a fundamentally fair hearing and resulted in prejudice, is that what equitable tolling, how do you get beyond all the timeliness issues? Well, you get around the timeliness in the direct appeal, the motion for late appeal, because we say he didn't validly waive his right to appeal. And therefore, if he didn't validly waive that right to appeal, then he can now appeal. And this Court has held, for instance, the fact he's outside the United States, there's a regulation that says you can't appeal if you've departed the United States. Right. But that can be overcome, as this Court overcame that in the Mendez decision, as it came over a similar bar to motions to reopen if you're outside the United States, in the Wiedesberg decision and in the Estrada-Rosales decision, all of those cases say if there's been a departure which has been not lawfully executed because of some irregularity, then you, A, can overcome the regulatory bar, and for being outside the United States and for the time limit also, because he's been deprived of his right to appeal. So both of those can be overcome. But how do you characterize that? Is that equitable? Is that an equitable kind of thing, tolling? Well, I think – How is it – is it just unlawful, or – It's an unlawful order, as this Court said in Mendez. That was an unlawful deportation. There he was thrown out of the United States without advice to his – advice without notice to his counsel. And the Court said, okay, that's an unlawful deportation. So this regulation that says you can't file a notice of appeal if you're already outside the United States is not binding in this case, because we interpret this statute to say that's via lawful order, a lawfully executed departure. So based on Mendez, Witteberg, et cetera, the Court here in this case would say there was not a lawfully executed departure because of the due process violation, and therefore, he can pursue his appeal. I think the case law is clear on that issue. And I notice you didn't really argue equitable tolling, which I – Correct. I don't think we need to, and that would be another concept which has come up recently in other contexts, if you file late. And you could do that also. But if there's not a legally executed departure, then you're not barred, and you're not barred time-wise if there's been ineffective assistance of counsel rendering you – an impossibility to file on time. Okay. Let me – no, I just have one last – couple of last questions for you. Sure. Was this ineffective assistance of counsel? Well, let me – He was informed at the hearing that he had the right to appeal. He was. Let me address this, because the key issue in this case is whether it was a valid waiver, whether the waiver was voluntary. And we think that the issues merged. There wasn't a voluntary waiver because he got misadvice. Now, the government argues, well, you say it was misadvice and you say it was ineffective assistance of counsel, but at the same time, you're saying the courts were all over the map in 1998 about whether you could go to Federal court or not and where you would go, and so why did this lawyer really mess up? He was just as confused as all the courts were about whether there was any judicial review anywhere. And why is that ineffective assistance of counsel? Well, the question isn't whether his advice necessarily was reasonable or not. The question is whether he gave correct advice and whether or not there therefore was a voluntary waiver. And that's really the key issue. The key issue here is that his advice was not correct. He did believe that there was no review in the Federal courts at all. But he was wrong about that, ultimately, as the courts said. As a matter of fact, one month prior to his giving that advice, this Court in the Magana case, which I'm familiar with because I argued it, held that there was review in Federal court in this situation and you can go into Federal court. Now, it was one month before. Yes, he should have been aware of the law, in our opinion. But a reasonably competent attorney, a reasonably competent immigration lawyer in 19, when was this? Ninety-eight. Ninety-eight, would have reasonably, could have reasonably been expected to advise his client that he had a right to challenge the classification of his prior drunk driving charge as not being an aggravated felony at the BIA. That's correct. And that he could seek review in the Ninth Circuit Court of Appeals of any adverse decision by the BIA. That's correct, Your Honor. Or Federal Court of Habeas, because it wasn't clear. The courts had not determined whether, which case you go to Habeas on in Federal court, which case you go to the Court of Appeals. But as we were telling all our clients, and I think most competent attorneys were, there's got to be Federal court review somewhere. The agency can't have the final word on this. And so they'll file your appeals and the courts will figure out where the review is, as they ultimately did. And we think it was incompetent advice. But we also think, more important, it was wrong. It was erroneous advice. And so Mr. Arreola relied on that erroneous advice and didn't pursue an appeal, because he was told it would be worthless. You will be deported is the language there. He told me that the immigration judge was going to deport me. If I appealed, the BIA was going to deport me. He also told me I could not appeal to the Ninth Circuit, and it was absolutely certain I would be deported. That was wrong, as it turns out, and therefore, there was not a valid waiver. And I think that that's clear. Let me address, if I can, the Alvarenga case, because the government relies heavily on Alvarenga. And I want to address to the Court why that case does not control. And I think it's very important. Kennedy. How many offenses are involved here? Just one? Well, the only basis for conviction for his deportation was one conviction for driving under the influence. He, as a matter of fact, with priors. Correct. He had prior driving under the influence convictions. How many did he have? I think he has about four. I'm not positive. What? I think approximately four. But. That's a lot. It is a lot, Your Honor. But the question is. Anybody that has one ought to get together with Alcoholics Anonymous. Has he done that? And he has, Your Honor. He has. He has reformed his life. And that's what this is about. Is he still there? Is he still. Look at you, not him. I know. I'm sorry. Is he still. With Alcoholics Anonymous. I'm not positive whether he still is. Lifetime commitment. It is a lifetime commitment, Your Honor. And I believe he is. I haven't checked since I last met with him several months ago on this. But yes, my best information is this is a commitment he has made. And he has had no drug-deriving convictions since then. The importance of this. Let me address Alvarenga. Before you get to Alvarenga. Is it because he was convicted with a DUI with priors. Correct. Is it absolutely certain that that is not an aggravated felony? Yes, Your Honor. Absolutely certain. No dispute. No dispute about that. No dispute of that whatsoever. And the Trinidad Aquino and Montes. Yes, there's no dispute on that. The only thing the government's arguing as well was it was lawful at the time because the board had made that decision. But I want to address that because it's very important. It wasn't lawful at the time. This court had not yet overturned Magallanes. But that was just an administrative agency decision, which was wrong on the law. Mr. Arreola cannot suffer permanent banishment from this country because the Ninth Circuit hadn't yet overturned that decision. Alvarenga, in Alvarenga, the court said he was not deprived of his right to judicial review. And that's why he can't challenge this again. Why? Because he voluntarily waived his right to appeal. The key difference between Alvarenga and our case is that Alvarenga did not get improper advice from his attorney. What the court says, he got one full and fair hearing, and he was not deprived of due process. There was no due process challenge in Alvarenga, and that distinguishes it. Alvarenga also misinterpreted Teague v. Lane, a Supreme Court decision on whether a new law can apply retroactively or not. And as this Court has made clear just recently in the Summerlin decision, the Alvarenga misinterpreted that. Summerlin made clear that there's a difference between procedural rules of law and substantive rules of law. The Alvarenga court didn't follow Teague in that and missed that distinction, and that is crucial here. Hold on for a second. Hold on for a second. Yes, Your Honor. One question. Your reinstatement approach, you're seeking a procedural remedy, and you have a Teague remedy. No, we're not taking a procedural remedy, Your Honor, in Teague. I'm trying to fit this under Bowsley v. Brooks. On the direct – on the direct appeal, Your Honor, in that case you're on the merits approach. In the direct appeal, the motion to file a late appeal, the direct appeal, where we challenge the underlying ruling. In the Summerlin. We challenge the underlying ruling that drunk driving is an aggravated felony. Drunk driving with a prior is an aggravated felony. We challenge that substantive ruling, which Trinidad Aquino and Montiel Barraza said, no, the Board is wrong on that. That's a substantive rule. And all that does is declare what the statute said. It's not a change in law. The Supreme Court in Harper made clear that when a court rules on interpretation of a statute, it's just declaring what the statute said from day one. This isn't a change in law. What the courts are concerned about is a procedural change, not being able to apply to past cases that are – that are not on appeal. The question here is whether the substantive change where the court says, the Board had it wrong. The Board had it wrong in 1998 when they issued this decision and Mr. Areola was deported. That clearly applies because the substantive law definition of what a statute said at that time. It's not a change in law, and it applies. Go ahead. That gets you to Bowsley. Correct. And Bowsley only gives you relief if there was no crime at all. There was a DUI. Let me briefly address this. There was. But the question is whether it was a valid waiver of appeal. What Bowsley says is that if a case is not on direct appeal and there's a substantive change of law, then you've got to show cause and prejudice. What you have to show is there was good reason not to appeal your case. And what was the reason? Because his lawyer said, you can't, buddy. You cannot appeal. That's the cause, and clearly he's been prejudiced by that lawyer's advice. Did you notice in your research who wrote the opinion that the Supreme Court reversed in Bowsley? No, I apologize. You are. One of the judges in this room, so I wouldn't. So I'm pretty much at the speed of Bowsley, and I'm not sure that your interpretation is correct. Well, I think, Your Honor, I think Summerlin. We'll leave you a little mystery. Thank you. Thank you. Good morning, Your Honors. May it please the Court, Pat Busandu on behalf of the Respondent. Your Honors, I'd first like to point the Court to 8 U.S.C. Section 1231A5, which establishes a legislative rule of finality that Congress has set forth in that statute, which bars any review or reopening of a prior order that has been executed and where the alien has then committed a criminal act by illegally reentering the country. That's exactly what happened in this case. And so our first argument is that this Court is precluded from seeking, from reviewing the underlying removal order, either in the reinstatement case or in the case which seeks to renegotiate. So you're saying we don't have any jurisdiction to consider constitutional challenges, due process challenges, which is what he's essentially raising here? Your Honor, basically, first of all, our argument also down the road of arguments is that there is no constitutional problem in the prior order. I'm dealing with your first statement that you just made. Yes. Yes, Your Honor. That is our argument. What we're saying here — That's not what our case law says, so — Well, this involves a different statute than some of the other statutes that the Court has discussed and reviewed in the IRERA amendments to the INA. This statute is a statute of first impression in this Court. In fact, it's not a statute of first impression. In Alvarenga, the Court said very clearly that there's no review over the prior order, that Congress has established a point in time where the litigation shall end. Essentially, what Congress has done is to codify in the reinstatement statute the rule of finality that the Supreme Court has established in the civil context in a series of decisions that we've cited in our briefs. Essentially, the Supreme Court has said, after there's a final judgment, that there is no more relitigation of that final judgment in the civil context. And this case, in the immigration context, presents the quintessential example of a case that is final and closed. The petitioner was order-deported, as we will argue in a moment. He — that was a valid waiver of his appeal. He was order-deported. But the critical points are, is he was actually deported from the country, and then he reentered the country illegally. Congress has said, at that point, the litigation stops. Those are the two triggering events. The gentleman was deported and illegally reentered the country. He took the law into his own hands by pursuing self-help. In fact, Your Honor, I would point to the record that indicates or that says, that the petitioner came back the same day that he was deported. This is not a case where the law changed and he was struggling over what to do. This is a case where he blatantly violated the law by coming back on the same day that he was deported, after a series of criminal convictions that he had in the United States. And I would point the Court to the record — the administrative record, pages 95 through 98, and I believe that's the record in the case that's 02-71614. Administrative record 95 through 98 indicates that he had four other DUI convictions. He also had a drug offense in 1985. That's found in the administrative record. That wasn't the basis for his deportation, correct? That's correct, Your Honor. But the Court has to deal with the language of Section 1231A5. It says very clearly there that there's no review or reopening of the underlying order. Is your position supportable if the deportation resulted from the commission of a crime that was later determined never to have been a crime? Yes, Your Honor. That's exactly what Alvarenga held, Your Honor. That's exactly the relief that the Supreme Court had. Bowsley, wasn't it? Well, Your Honor, in Bowsley — and we distinguish the Bowsley line of cases and the Somerlin case — Saying that this is a Bowsley case. Yes, Your Honor. But we would first — we would first point out that this is not a Bowsley case, as Your Honor had mentioned earlier in this argument. But also, I think, first of all, is the question of whether the Bowsley line of cases applies in the civil context. We cite a series of cases, Harper — the Harper line of cases, the Reynoldsville case in the Supreme Court, and a number of other cases which say that once there's a final judgment, a civil judgment in the — in the civil context, that there's no more challenge or reopening or review of that final judgment if there's a subsequent change in the law. And that's clear. The Petitioner has not — Bowsley got up to the Supreme Court on a habeas posture, and that's civil. Yes.  That's a key difference. The — the cases, if you look at James B. Distilling Company and those line of cases, they distinguish between the civil and criminal context. The Supreme Court has struggled with this issue for — for a couple of decades in fashioning a test. In the civil context, the previous test was a Chevron oil test. Struggled no more — no more so than the circuit judge is trying to figure out what to do. That's right, Your Honor. But — but we do think it's clear. I mean, you're not asking us to feel sorry for him, are you? No, Your Honor. But we do think it's clear. And — and the Petitioner, I would point this out, has cited no cases in the civil context that say that a final judgment can be looked at again — a final civil judgment can be looked at again if there's a subsequent change in the law. And I would say, Your Honor, that that — that that issue is — is — is binded by this — this Court is bound by that issue on Alvarenga, because Alvarenga involved a similar situation where this Court held subsequently in Magana-Pisano. It's the same issue that there was a change in law. The Supreme Court — the Ninth Circuit held, interpreting the immigration statute at Section 212C, that yes, that that statute does not preclude criminal aliens from applying for discretionary relief. And Mr. Alvarenga reentered the country and tried to utilize that precedent in this circuit and said no, that that's a final determination. Did Alvarenga argue that he was deprived of a fair hearing in the underlying deportation proceedings? He argued — You see, you know, here — like — like the one we have here. No. He argued — he argued that it was unfair only because of the change in law. Right. Now, let me get to that issue of the — because I think that this case has — Doesn't that somewhat distinguish Alvarenga from this situation, just a little? Perhaps a little bit, although I think the Court still has to deal with language in Alvarenga about — Alvarenga left that issue somewhat open. Your Honor, I think — I think that the Court doesn't have to reach that question because there is no violation in the prior proceedings. And I'd like to get to that point. If we look at — very closely at the record, and I would point the Court to case number 0271614, that's the appeal of the reinstatement. Looking at the administrative record in that case, I would point the Court to pages 205 to 211. That's also, in the excerpts of record, pages 71 to 77. If we look at that record closely, there's a number of key facts that are undisputable. First of all, one key fact is that Mr. Arriola did not want to appeal to the Board at the outset of this — of his case. He had never wanted to appeal the BIA's decision because he was in detention. And his prior counsel told him, you are going to remain in detention if you appeal to the Board, which was correct. He made a — he made a decision not to appeal at the — at the outset of that hearing. And I would point the Court to page 205 of the administrative record. It was only after the immigration judge repeatedly told him that, quote, it's a very different consequence, page 205 to 206 of the administrative record, or if not a momentous decision, it is one that is very serious in your life, page 208 of the administrative record. It was only after prodding by the immigration judge and after conferring with his prior counsel, Mr. Cardenas, that he reserved appeal. In the end, he reserved his right to appeal. He reserved his right to appeal. When they left that hearing, when that hearing terminated, he had reserved — he had reserved his right to appeal. Isn't that correct? That's correct. But what I'm trying to — here's the point I'm trying to get at. By the way, did you ever find the letter that the lawyer sent in? It wasn't in the record. Later, he sent in a letter and said, my client waived his right to appeal. No, Your Honor, but that's — that's undisputed in the — we don't — it's not in the record. But, Your Honor, the point I want to make is that this testimony of the hearing, which is accurate, it's transcribed, this is what happened at the hearing, conflicts with the declarations that they've submitted. And it undermines the declarations. For example, the declaration of his sister, which is submitted at supplemental — the supplemental administrative record, page 45, says, when the immigration judge ordered him deported, my brother clearly stated that he wanted to appeal the deportation order. Now, that flatly contradicts the administrative record. And there's a whole series of statements in here that contradict the record. All — so, what I — the point — He says that one of the reasons that he later waived is that he was advised that the reason why was because of the violence against him. He was so excited when that was going on. Is that the argument, that he says, I made this decision that I'm in trouble with now because of this misadvice from my — But — yes, that's the argument, Your Honor. But I would — I would make two points. First of all, it wasn't misadvice to say that he was going to lose to the — if he filed an appeal to the board. That was correct. Because Magellanus was controlling. There was no way that the immigration judge could get around it. But point number two, which is their key point — You mean the BIA? The BIA. But their — but their argument is, well, basically, the prior counsel told the petitioner that he couldn't go to federal court, that there was no way he could get review either in the court of appeals or in the district court. Again, the administrative record belies that point. So I would point the court, for example, to page 206 of the administrative record. Again, this is in Appeal No. 01-71596. It said, the judge stated to Mr. Ariel, you have a right to ask that court, which is the board, to review my decision, to see if my decision is correct. This is part of the process. These are how laws are changed. Then the immigration judge said, at page 207-208, if you do not appeal and you have given up your right to appeal, a change in the law or a change in the case law may not affect you as it might someone who is on appeal. Then I would cite to the court, further in the record, at page 199 of the administrative record, that Mr. Cardenas, who was the petitioner's prior counsel, Mr. Cardenas himself made the argument to the immigration judge that matter of megalanus was wrongly decided and that, quote, it is a case that still will go up through the court of appeals and might be overruled. Now, it's the court of appeals. And from all of that, you deduce that Mr. Areola understood that he had to exhaust his administrative remedies by going to the BIA and then petitioning for review in the Ninth Circuit Court of Appeals to challenge whether a DUI conviction can be classified as an aggravated felony. Yes, Your Honor. In fact, Mr. Areola's own family members, Your Honor, page 207 of the administrative record, where the immigration judge notes that Mr. Areola's own family members mentioned at the hearing that the board's interpretation of law, quote, may be overturned someday. This is a case where there was no invalid waiver. But who was going to overturn it? Who might overturn it? Well, that's either the board or the court of appeals or the Federal District Court. I mean, they were on notice. The petitioner was on notice. And the other thing that I wanted to point out is that these citations to the administrative record basically undermine in making credible declarations. I mean, there's no way the Court can get around that. It's – there's contradictions. And if you're going to go with the record, this is not – we haven't submitted declarations. This is the administrative record of what happened at the hearing. Your Honors, I would also like to just address the issue of jurisdiction. I think – because I think it's important. I did address that briefly at the beginning. And the issue is one that the Court has wrestled with already in some of these cases, but particularly in the Alvarenga case and then also in the recent Padilla case where the Court noted that there is no review of a prior order either on collateral attack or on direct review. I would distinguish these cases, this statute, from what the Petitioner's Counsel was discussing earlier regarding the statute that was at play at Mendez, the Mendez case, the Mendez line of cases. In those cases, you have a difference involved. First of all, the Court interpreted the statute in Mendez to only apply to, quote, lawful departures. I think the term in that statute was departures. And the Court said it has to be a lawful departure. Well, this is a different statute. And this statute is closer to the statute that the Supreme Court analyzed in Mendoza-Lopez where it entered – basically it analyzed the counterpart in the criminal context to this statute. It was the criminal reentry statute. So it contained the same kind of language. There was a requirement for a deportation and then illegal reentry or an attempted reentry. And there the Court very clearly looked – the same argument was made to the Supreme Court that it only applies to lawful deportations. And the Court rejected that. The Court said that there's no evidence in the statute, I'll quote from the text and background of Section 1326, thus indicate no congressional intent to sanction challenges to deportation orders in proceedings under Section 1326. And there's no text or background of this statute either that evidences a congressional intent to apply only to lawful deportation orders. So, therefore, I would – we would argue that it doesn't apply – it does – I'm sorry, it does apply to all orders whether or not there's a claim that the prior order was invalid. But, again, the Court can – doesn't have to reach that question, nor does it have to reach the constitutional question in this case, because all it has to do is find that there's no invalid waiver, and basically this case fits right under Alvarenga and the Court can – can dismiss it that way. Your Honor, I guess I can't reserve any of my time, can I? The Justice Department is throwing itself on the mercy of this panel. I don't know. If, you know, if fairness requires it, we'll give you a little time. I'll press ahead. Does the Court have any further questions? Let me ask you this. What if we were to disagree with you and agree with the Petitioner that he was denied effective assistance of counsel in his underlying deportation hearing? Well – Then what does that do with your argument? Okay. The Court would have to first address jurisdiction, I guess, and it's your saying that the Court found jurisdiction to – Let's just assume that. Let's just assume that we agree with the Petitioner that he was denied effective assistance of counsel. Well, Your Honor – Where does that then – what does that do with this case? There's a question of prejudice, I guess. Because he illegally reentered the country. Now, he's – that's a deportable offense. There's no dispute about that. So the question would be whether there's any prejudice at all. And I'm not sure how he gets around that. You mean his reentry after he voluntarily departed? Well, he illegally reentered. Is that the reentry you're talking about? That's right. Because there's no lawful basis for him to be in the country. That reentry was an intervening event. I mean, it can't be ignored. So I assume that the request would be – Well, if it was unlawful to kick him out of the country – But I think – I think, Your Honor, I think that – So why would it be lawful for him to reentry? I think that the Court has – I'm sorry. Yeah. Well, I think that the illegal reentry cuts it off. And I would cite to an old decision by this Court, and a decision that was related to the Mendez cases, but Hernandez-Almanza, I believe, is the case, where that was the precise scenario there. The alien was excluded. And later on, the basis of exclusion was found to be invalid. But in the meantime, he invoked the self-help doctrine and illegally reentered the country. And, in fact, in cases after that case, the Court reached a different result in Weisberg and Estrada, those cases, and it distinguished Hernandez by saying that in those two cases, the alien pursued his remedies from abroad. And I would like to make that point, because it's not as if the petitioner did not have other viable legal remedies. He should have gone. He should have attempted to go to the U.S. consulate and make his case there. See, this is not a case where the petitioner was struggling about what to do after the law changed. He came back in right away. But what he should have done if the law had subsequently changed and what aliens can do is to make their case with the U.S. consulate. Now, he has apparently several family members who are U.S. citizens, and there's a way that he could have petitioned to try and come into the country through that and to make the argument that he was removed unlawfully after the law changed. I mean, there's a process that enables someone to go to the U.S. consulate and request permission to reenter the country. And it's in the exercise of discretion. But certainly, if the adjudicator was aware of the change in the law, it would seem to me that there's a possibility, good possibility of the favorable exercise of discretion. But let me just want to make sure I understand your point here, that even if we were to conclude that he was denied due process at his underlying deportation because he didn't receive effective assistance of counsel, he would be subject to deportation again because of the reentry. That's right, Your Honor. I mean, the – Now, it's interesting. You know, he was – the government initially, as I read in the record here, on the other arm of the government, the prosecutorial arm of the government, was going to – brought a 13 – what is it, 13? 1326. 1326 criminal prosecution against him. And he – and he raised – apparently, his defense counsel raised this whole question about the validity of his prior deportation proceeding and the change in the law. And the government, the prosecutorial side, dismissed the prosecution for his legal – his illegal reentry. Your Honor, can I answer that question? I'm out of time. Go ahead. First of all, that precise situation happened in Alvarenga as well. I don't think it's of any relevance. The prosecution – U.S. Attorney's offices all the time decide not to prosecute cases, illegal reentry cases, in particular for certain circumstances, resources, et cetera. There's nothing that we can take away, I think, from that fact. Again, it happened in Alvarenga as well. So I don't think it's – I don't think it's relevant to the civil action. Thank you, Your Honor. Let me briefly but clearly try to respond to the points the Governor raised. First of all – I just – I just want to clear this point. At the time that he was represented by his counsel and gave up the right to a life  appeal, was the case of U.S. v. Trinidad-Aquino, was that on appeal to the Ninth Circuit? Was that pending? The Trinidad-Aquino was not a – the board decision in that wasn't a published decision. So I'm not sure when the underlying immigration judge decision in that case was. The board had already ruled a few months before in the Magallanes case, which is the precedent decision, that it was an aggravated felony. This Court subsequently overturned that in Trinidad-Aquino. So the state of the law at the time the immigration judge made his ruling was that the board ruling controlled that it was an aggravated felony. This Court subsequently – At that time, was the Aquino case on file with the Ninth Circuit? I don't know whether it was on – Other cases that were raising that issue? I just – quite honestly, Your Honor, I'm sorry. I don't know when the immigration judge decision was and when the board decision was in Trinidad-Aquino. So I can't say whether it was already on appeal. But counsel wouldn't have any way of knowing that that particular case was on appeal. There's probably 50 cases or 20 cases or five cases. There was other cases dealing with Trinidad-Aquino had to deal with that case. But there were several cases taking that issue up. And he could have taken this up, and that's what he should have done. He should have advised Mr. Arriola, we can appeal this to the court of appeals and hopefully overturn this decision. But he told him the opposite. He told him that there was no right to go to Federal court. Now, I want to address that issue briefly. We don't know whether or not the Aquino case and cases raising the same issue were on file with the Ninth Circuit. I would assume they were. I don't know Aquino in particular, but I would assume that there were several cases going up from immigration judge and board of immigration appeals decisions to the courts of appeals. People were challenging that decision right and left because they thought it was wrong. And so we had several cases in our office going up to the courts of that. It just happened that Trinidad came down and then decided the law and said the board was wrong. But that's what Mr. Cardenas should have told his client. Should have sort of said, we can go to the court of appeals. Not that we can't go to the court of appeals. Now, government counsel says, well, the record contradicts that. You can't really believe the affidavits. I don't think that's true. What the immigration judge basically said is you can appeal to the board of immigration appeals. The immigration judge gave no advice whatsoever about whether you could go to Federal court. His attorney said, yes, you can go to the board of immigration appeals, but there's no point in that because the board has already ruled and you can't go any further on that. You can't get to Federal court. And that's really where the injustice occurred here. I want to address a couple of other points, if I can, if the Court will indulge me on this. You know, we inventory issues in every case that's filed. Did you know that? I do know that, Your Honor, that you have a case issue. And I suppose no one's ever asked this. I suppose you could just call the clerk, tell the clerk the issue, and ask the clerk if other cases that are raising that same issue are pending before this Court. Yes, you can, Your Honor. And I've done that myself on several occasions. I have the batching mechanism here at your court and batch civil cases together that are of the same issue. Very briefly on whether the Teague, whether Bowsley and Summerlin apply in a civil case, they do. This Court has said, as a matter of fact, in Alvarenga, it applied Teague to a civil case, Teague being a criminal, arising out of a criminal case. There's no question that the law applies in a civil context, and Summerlin has now on Bonk overturned Alvarenga in essence on that issue. On the no review of the order at all, no matter what happens, which is really the government's position in response to your question, the government's position would have to be logically that even if after this hearing Mr. Areola was whisked out of the courtroom saying, I want to appeal, I want to appeal, and he's thrown out of the courtroom saying, forget it, your bus is going to Mexico today, you're not going to get out of here. The government's position as a matter of law has just said to this Court, if he comes back, if he's deported and comes back illegally, he cannot do anything about the fact that his violation of his civil rights, constitutional rights were violated at that time. That cannot be the law. The law is, if there was gross miscarriage of justice, and that, by the way, is the what Hernandez-Almanza says. Hernandez-Almanza just dealt with a case where there was a drug conviction that was expunged subsequently, and then there was a subsequent unlawful reentry. And what the Court said, there was no gross miscarriage of justice here. All you had was an expungement later on. So it didn't deal with the situation. It was a due process violation, as you are. I had never heard that argument before, because we have a number of prejudice in a due process case involving ineffective assistance of counsel. Absolutely, Your Honor. Where the immigrant comes – alien comes back. Correct. We'd never be able to find prejudice in that circumstance. Right. And, in fact, just recently in Leon Paz, in the – this Court held in Leon Paz in the exact same situation where an individual did – was deported, entered illegally. The Court had misapplied the bar to 212C before Magana came down. Individual came down – came in illegally. The government tried to prosecute him under 1326, and the Court said, uh-uh, you cannot do that. Why? Because there was a fundamental miscarriage of justice in the underlying proceeding. Bottom line, what we have here, we believe, is undisputed that there was misadvice. That the Court believes that there is a conflict, and it could be mandatory evidentiary hearing on that issue, on what advice his attorney actually gave him when there was a valid waiver or not. We think the record is clear that there wasn't. But bottom line, Mr. Areola cannot be deprived of his right to live in the United States with his family. He's been a permanent resident all his life. He cannot be deprived of that based on the board error of law that has been declared an error by this Court solely because he decided subsequently to re-entry the United States. If the government wants to try to deport him for that illegal re-entry, they could try to do that. And I want to make that clear. They could try to do that subsequently for that subsequent act in a subsequent hearing. In a due process hearing, that issue would come out. The government might charge him with illegal re-entry. He would then raise two things. One, he would raise the fact that the prior deportation was illegal, therefore, I can't be subject to the illegal re-entry deportation ground. But if the Court disagrees with him and says, no, we think you can, we think, as the government says, you should have stayed out of the United States and try to go to the consulate and try to have discretion there. By the way, there's no judicial review of that. But they try to deport him for that, at least in that proceeding. If a judge said you didn't have the right to enter illegally, he would still have the right to apply for discretionary relief from deportation, and the Court would equitably consider whether that offense, re-entering the United States after an unlawful deportation order, re-entering illegally, is sufficient enough to permanently bar him from ever being with his family again. And we think it doesn't. Thank you very much. All right. Does the government want to say anything? I'm going to give you a full due process. Very briefly, Your Honor. Just addressing a couple of points that opposing counsel made. First of all, there were new points that he raised. Yes, Your Honor. In Teague, I'm sorry, in Alvarenga, actually, the Court does cite Teague, but it cites it for the following statement, which is, let's see. As the Court explained, it has long been established that a final civil judgment entered under a given rule of law may withstand subsequent judicial change in that rule. So Alvarenga is invoking Teague, but it's invoking Teague's discussion of the civil context. Secondly, on the prejudice issue, the key distinction between the general ineffective assistance of counsel cases in this case is he was deported and illegally reentered. So the problem is finding prejudice. Again, how is he going to find prejudice? Now, Petitioner talks about an immigration hearing where he'll be able to make arguments, but he's still deportable based on the illegal reentry, notwithstanding the prior conviction. I'm sorry, the prior deportation order. Thirdly, on Leon Paz, that was a criminal case, so it doesn't raise the issues of the first section, nor did it involve or it did involve actually an immigration judge's erroneous advice to the Petitioner. So that case is not involved here. And then finally, Your Honor, we would argue that if the Court finds that there's a factual dispute, we think it's clear that the administrative record here is — undermines the declarations. But an evidentiary hearing is not necessary because that hearing has already occurred in the administrative context in his removal proceedings, and the record is clear, we think. Thank you, Your Honor. Thank you very much. The matter will stand submitted. And come to the next matter on the calendar, Charles Jackson v.
judges: Pregerson, Beam,paez